IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

CAMILO CAMBEROS-ARTEAGA,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C15-4062

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.   INTRODUCTION .................................... 2

II.  PROCEDURAL BACKGROUND ............................ 2

III. PRINCIPLES OF REVIEW ............................. 3

IV.  FACTS ............................................ 5
     A.  Camberos-Arteaga's Education and Employment Background ..... 5
     B.  Vocational Expert's Testimony from Administrative Hearing
         Held on December 9, 2013 ................................ 5
     C.  Camberos-Arteaga's Medical History ...................... 6

V.   CONCLUSIONS OF LAW ............................... 7
     A.  ALJ's Disability Determination ........................... 7
     B.  Objection Raised By Claimant ............................ 10
     C.  Reversal or Remand ...................................... 14

VI.  CONCLUSION ...................................... 15

VII. RECOMMENDATION .................................. 15

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Camilo Camberos-Arteaga on July 21, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Camberos-Arteaga asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Camberos-Arteaga requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On February 27, 2012, Camberos-Arteaga applied for disability insurance benefits. In his application, Camberos-Arteaga alleged an inability to work since July 7, 2011 due to depression, anxiety, diabetes, glaucoma, back injury, high cholesterol, carpal tunnel syndrome, and sleep problems. Camberos-Arteaga's application was denied on May 23, 2012. On July 20, 2012, his application was denied on reconsideration. On December 9, 2013, Camberos-Arteaga appeared via video conference with his attorney before Administrative Law Judge ("ALJ") Jan E. Dutton for an administrative hearing.[1] Camberos-Arteaga and vocational expert Theresa Wolford testified at the hearing. In a decision dated January 8, 2014, the ALJ denied Camberos-Arteaga's claim. The ALJ determined that Camberos-Arteaga was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Camberos-Arteaga appealed the ALJ's decision. On May 20, 2015, the Appeals Council denied Camberos-Arteaga's request for review. Consequently, the ALJ's January 8, 2014 decision was adopted as the Commissioner's final decision.

---

[1] At the hearing, Camberos-Arteaga was represented by attorney Al Sturgeon. On appeal, Camberos-Arteaga is represented by attorney Jay E. Denne.

On July 21, 2015, Camberos-Arteaga filed this action for judicial review. The Commissioner filed an Answer on September 21, 2015. On November 9, 2015, Camberos-Arteaga filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On January 8, 2016, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 18, 2016, Camberos-Arteaga filed a reply brief. On January 19, 2016, Judge Mark W. Bennett referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[2]

### III. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

---

[2] The case was reassigned to Judge Leonard T. Strand on February 17, 2016.

3

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial

evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Camberos-Arteaga's Education and Employment Background

Camberos-Arteaga was born in 1959. He has a limited education, reporting that he only completed the third grade in schooling.[3] At the administrative hearing, Camberos-Arteaga's attorney confirmed to the ALJ that Camberos-Arteaga had a third grade education in Mexico, and some ability to read and write in Spanish, but "very little" in English.[4] In the past, Camberos-Arteaga worked as a laborer in a meat processing plant.

### B. Vocational Expert's Testimony from Administrative Hearing Held on December 9, 2013

At the administrative hearing, the ALJ and vocational expert Theresa Wolford engaged in the following colloquy:

> Q: All right. So, my first question, if [Camberos-Arteaga] had no, no physical restrictions and no mental restrictions, could he return to meat laborer?
>
> A: Yes. He could. . . .
>
> Q: Second question, if he could only do medium exertional work, and by that I mean not lift or carry over 50 pounds occasionally, 25 pounds frequently, would there be a retained base[] of light and medium work and, if so, could you identify some specific examples and/or give an overview of the retained job field,

---

[3] *See* Administrative Record at 175.

[4] *See* Administrative Record at 31.

>    primarily for an illiterate person with -- medium exertion?
>
> A: Yes. Laborer, stores[.] . . . Laundry worker[.] . . . Housekeeping[.] . . . Steamer[.]

(Administrative Record at 44-45.)

Camberos-Arteaga's attorney also questioned the vocational expert:

> Q: Ms. Wolford, I'd like to add another hypothetical. That being the same background information that was previously supplied but that [Camberos-Arteaga], for a variety of reasons, cannot sustain an energy level sufficient for an eight hour day, four hour a day maximum. Would there be any full time employment, given those -- that hypothetical situation?
>
> A: No. There would not.

(Administrative Record at 45.)

### C. Camberos-Arteaga's Medical History

On July 7, 2011, Camberos-Arteaga presented at the Mercy Medical Center Emergency Room in Sioux City, Iowa, with left shoulder pain following a motor vehicle accident. Camberos-Arteaga reported moderate and constant left shoulder pain that was worse with movement. He reported no back or neck pain at that time. Upon examination, the emergency room doctor diagnosed Camberos-Arteaga with a left shoulder contusion with possible rotator cuff injury. The doctor treated Camberos-Arteaga with medication and discharged him home with ibuprofen, rest, ice, and a sling.

On August 26, 2011, Camberos-Arteaga met with Dr. Micahel L. Hattan, M.D., complaining of headaches. In addition to headaches, Camberos-Arteaga also complained about neck pain and stiffness. He described his neck pain as aching and radiating into his left shoulder. He also stated he had difficulty sleeping due to the headaches. Upon examination, Dr. Hattan diagnosed Camberos-Arteaga with neck pain and back pain. Dr. Hattan recommended medication and range of motion exercises as treatment.

On October 28, 2011, Camberos-Arteaga began physical therapy at Community Rehab in Sioux City. Camberos-Arteaga's symptoms included:

> pain in his cervical, thoracic, and lumbar spine on the left side. He also complains of headaches since the [July 2011 motor vehicle] accident. He reports muscle spasms in the back since the incident. He states he is unable to sleep on his left side due to pain as well. He reports he has been unable to work due to his back pain since the accident.

(Administrative Record at 256.) Camberos-Arteaga also reported pain with bending to pick items off the floor and pain changing positions. Upon examination, Blake Wagner, PT, determined Camberos-Arteaga had: (1) tenderness in his left cervical, thoracic, and lumbar paraspinals; (2) limited range of motion in his left cervical, thoracic, and lumbar paraspinals; and (3) weakness in his left shoulder due to pain. Wagner recommended physical therapy and specialized range of motion home exercises as treatment.

In an undated letter from 2012, Dr. Joe Hoomany, D.C., provided a review of Camberos-Arteaga's chiropractic treatment from July 2011 through March 2012. Camberos-Arteaga presented for consultation on July 11, 2011, following his motor vehicle accident, complaining of low back, neck, and shoulder pain, and headaches. Camberos-Arteaga rated his neck and shoulder pain at 7-8 on a 10-point scale, with 10 being the greatest pain. He rated his low back pain at 3-4, also on a 10-point scale. He indicated that the pain affects his ability to rotate his head, raise his arm above shoulder level, and sleep through the night. Upon examination, Dr. Hoomany diagnosed Camberos-Arteaga with low back pain, neck pain, and shoulder pain. Dr. Hoomany opined that Camberos-Arteaga's chiropractic treatments would improve his condition.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Camberos-Arteaga is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in

the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant

work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined Camberos-Arteaga had not engaged in substantial gainful activity since July 7, 2011. At the second step, the ALJ concluded from the medical evidence that Camberos-Arteaga has the following severe impairments: diabetes mellitus. At the third step, the ALJ found Camberos-Arteaga did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Camberos-Arteaga's RFC as follows:

> [Camberos-Arteaga] has the residual functional capacity to perform medium work[.] . . . [He] should not lift or carry over 50 pounds occasionally and 25 pounds frequently. [Camberos-Arteaga] is illiterate in English.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Camberos-Arteaga was unable to perform his past relevant work. At the fifth step, the

ALJ determined that based on his age, education, previous work experience, and RFC, Camberos-Arteaga could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Camberos-Arteaga was not disabled.

### B. Objection Raised By Claimant

Camberos-Arteaga argues the ALJ's RFC assessment is flawed because it is not supported by substantial evidence. Specifically, Camberos-Arteaga argues "[t]here is no evidence in the Record which supports the finding that [he] could perform medium work."[5] Similarly, Camberos-Arteaga maintains "[t]he ALJ's opinion cites no medical evidence which indicates that [he] can perform work in the medium category."[6] Camberos-Arteaga concludes:

> There is no dispute that [he] was age 54 at the time of the hearing (and was therefore closely approaching advanced age), is illiterate, and performed unskilled work. Therefore, a light duty classification leads to a disability finding, and the ALJ's failure to explain why she concluded that he could do medium level work was prejudicial.

Camberos-Arteaga's Brief (docket number 13) at 14. Therefore, Camberos-Arteaga requests that this case be remanded for further development and consideration of his RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical

---

[5] Camberos-Arteaga's Brief (docket number 13) at 13.

[6] *Id.* at 14.

records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). Significantly, the ALJ's duty exists independent of a claimant's burden to press his or her case. *Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014) ("'Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.' *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).").

Moreover, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 416.919a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination.").

20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination [may be purchased] to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

This is a difficult case to review. Overall, the record contains very little medical evidence, and the medical evidence that is in the record offers little support for Camberos-Arteaga's claim of disability due to neck, low back, and shoulder pain. Adding to the difficulty is the ALJ's lack of explaining her reasoning for her determinations in the decision. For example, the ALJ discounted the opinions of the non-examining consultative State agency physicians who found that Camberos-Arteaga had no severe impairments because she believed his diabetes constituted a severe impairment. The ALJ, however, offers no explanation as to how Camberos-Arteaga's diabetes limits his ability to work.

Furthermore, the ALJ did not find Camberos-Arteaga's neck, low back, and shoulder pain to be severe impairments, but offers no reasons for finding his neck, low back, and should pain to be non-severe. Instead, the ALJ only generically discusses Camberos-Arteaga's treatment for neck, low back, and shoulder pain in her decision. For example, the ALJ points out that Camberos-Arteaga underwent physical and occupational therapy from October 2011 through May 2012, and used anti-inflammatory drugs and muscle relaxants to treat his complaints of pain.[7] The ALJ also notes three instances where Camberos-Arteaga had normal neurologic examinations and only mild symptoms.[8] In her credibility determination, the ALJ merely notes that Camberos-Arteaga had a good work history, took over-the-counter drugs, and improved after therapy. While the ALJ reviews this information, she offers no discussion of how this information affects or does

---

[7] *See* Administrative Record at 20.

[8] *Id.*

12

not affect Camberos-Arteaga's functional abilities, or how this information relates to her RFC assessment for Camberos-Arteaga.

Moreover, the ALJ also indicated that "[n]o physician of record has opined that [Camberos-Arteaga] had greater functional limitations that [(sic)] described above over the course of 12 months or throughout the relevant period."[9] While the ALJ's observation is correct, the Court finds it significant that no physician of record opined *any* functional limitations, greater or lesser than the ALJ's RFC assessment. There is no evidence in the record addressing Camberos-Arteaga's functional abilities and/or limitations.

Herein lies the difficulty with this case. While the record demonstrates that Camberos-Arteaga was diagnosed with neck, low back, and shoulder pain, and was treated for such pain, there is no medical evidence as to the level limitations his pain caused, if any limitations. Furthermore, the ALJ offers no explanation for her conclusion that Camberos-Arteaga's RFC includes the ability to perform medium work (occasionally lifting 50 pounds and frequently lifting 25 pounds). *See* 20 C.F.R. § 416.967(c). Camberos-Arteaga's RFC assessment is significant in this case because as Camberos-Arteaga points out in his brief, if his RFC limits him to light work, then based on his age, education, and previous work experience, he would be considered disabled under the Medical-Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.09. Therefore, it is important in this case that the ALJ explain her reasons for determining Camberos-Arteaga is capable of medium work and support her reasoning with evidence from the record. Because the ALJ failed to explain her reasoning and there is no evidence in the record that addresses Camberos-Arteaga's functional abilities and limitations, the Court finds that remand is appropriate to allow the ALJ to fully and fairly develop the record as it pertains to Camberos-Arteaga's RFC. *See Guilliams*, 393 F.3d at 803 (providing that an ALJ's RFC assessment must be based on all of the relevant

---

[9] *Id.*

evidence). Moreover, on remand, the ALJ should also order a consultative examination that addresses Camberos-Arteaga's functional abilities and limitations. *See Barrett*, 38 F.3d at 1023 (providing that an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled).

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to Camberos-Arteaga's RFC.

14

## VI. CONCLUSION

I recommend that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ should fully and fairly develop the record with regard to Camberos-Arteaga's RFC. Accordingly, I believe that this matter should be remanded for further proceedings as discussed herein.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **REVERSE** and **REMAND** this matter to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 10th day of March, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA